IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREIGHTGATE, INC.,** *Plaintiff,* <br><br> v. <br><br> **RITE WAY FREIGHT LTD.,** *Defendant.* | Civil No. 24-2108 |

**MEMORANDUM**

**Costello, J.**                                                                                                           **December 19, 2025**

Plaintiff Freightgate, Inc. is a Delaware corporation that provides a logistics cloud platform offering transportation management services for shippers, forwarders, and carriers to manage their supply chain workflow. ECF No. 1 ¶ 2. Defendant Rite Way Freight Ltd. is a Canadian corporation that operates a shipping and logistics business throughout the United States and Canada. *Id.* ¶ 3. Plaintiff alleges that Defendant entered a contract for Defendant's cloud logistics platform services, which it breached by failing to tender monthly payments and then failing to pay an amount owed under an acceleration clause. *Id.* ¶¶ 1, 7, 12-13. Defendant now moves to dismiss the complaint. For the reasons that follow, the Court will deny Defendant's motion.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff alleges that Defendant entered a three-year contract for Defendant's cloud platform management services. *Id.* ¶ 7. The contract, which is titled "Solutions Quote," ECF No. 1-2, provided that Defendant pay an initial set-up fee and monthly subscription fees for various services. ECF No. 1 ¶ 7. Plaintiff alleges that it held a review session with an agent of Defendant to discuss the Solutions Quote and the agent "stated that everything looked good[.]"

*Id.* ¶ 10.  Defendant subsequently executed the agreement, and its accounting department represented that payment towards the outstanding amount was on the way.  *Id.* ¶ 11.

At the bottom of the Solutions Quote, there was a provision stating that "[b]y accepting this quote you accept the license terms posted at freightgate.com/legal.  No other term or condition contained in any purchase order, confirmation or similar form shall have any force or effect."  ECF No. 1-2 at 2.  The license terms posted at that website provided that any untimely payments would accrue at an interest rate of 1.5% per month and any payments more than 60 days late would trigger accelerated payment of the amount due for the remainder of the contract period.  ECF No. 1 ¶ 8; ECF No. 1-1 at 3 § 5.4.  The license terms further provided that Defendant would be responsible for "any and all expenses (actual or expected) in connection with enforcing any provision of this agreement, including but not limited to collection fees[.]"  ECF No. 1-1 at 3 § 5.5.

Plaintiff alleges that Defendant did not tender any payments and its default lasted more than 60 days, triggering the acceleration clause in the license terms.  ECF No. 1 ¶¶ 12-14.  Plaintiff then filed this breach of contract action to collect $230,602.46—the total amount due for the remainder of the three-year license term, plus 1.5% interest, and attorneys' fees.  *Id.* ¶¶ 15-16.

Defendant moved to dismiss.  Defendant argues that the license terms and conditions were not incorporated by reference into the Solutions Quote and are therefore not binding.  *See* ECF No. 7-2 at 1-3.  More specifically, Defendant contends that the license terms were listed at the bottom of the Solutions Quote "in incredibly fine, illegible print" and were not directly hyperlinked, and that Plaintiff never showed the terms to or discussed the terms with Defendant.  *Id.* at 3-4 & ns. 5, 6.  Defendant asks the Court to dismiss the suit on this basis because there can be no breach of terms that were not incorporated into the main agreement.  *See id.* at 6-8.

In the alternative, Defendant asks the Court to strike Plaintiff's requests for damages under the acceleration provision and for attorneys' fees under the "collection costs" provision. *Id.* at 8-10. Defendant argues that the acceleration provision should be stricken because it constitutes an unenforceable penalty. *Id.* It argues that attorneys' fees cannot be collected under the "collection costs" provision because that term makes no clear reference to attorneys' fees. *Id.* at 10.

Plaintiff opposed the motion, arguing that the complaint adequately alleges that the license terms—including the acceleration and collection costs provisions—were clearly incorporated into the Solutions Quote and are enforceable against Defendant. ECF No. 9 at 2-4. Plaintiff further argues that the enforceability of the acceleration and collection costs provisions cannot be decided on a motion to dismiss because they "are disputed issues of fact that will need to be resolved through the course of discovery." *Id.* at 4-5.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a reasonable inference "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When reviewing a 12(b)(6) motion, a court can consider the complaint, as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**III.     ANALYSIS**

"To state a breach of contract claim under Pennsylvania law, a plaintiff must plead '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 739 (E.D. Pa. 2016) (quoting *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006)) (further citations omitted).[1]

Defendant does not dispute that it entered a contract with Plaintiff. *See generally* ECF No. 7-2. Thus, only the second and third elements of Plaintiff's claim are at issue. Specifically, (1) whether the license terms were incorporated by reference into the Solutions Quote such that the terms were enforceable against Defendant; (2) whether the acceleration clause is a permissible liquidated damages provision or unenforceable penalty; and (3) whether the cost collection provision permits the recovery of attorneys' fees.

**A.     Whether the License Terms Were Incorporated by Reference**

Under Pennsylvania law, a separate document is considered incorporated by reference into the main agreement where (1) "the underlying contract makes clear reference to [the] separate document," (2) "the identity of the separate document may be ascertained," and (3) "incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003).

<u>Clear Reference.</u> The Solutions Quote clearly references the separate license terms. It unequivocally states that "[b]y accepting this quote you accept the license terms posted at

---

[1] Section 12.10 of the license terms provides that the contract is governed by the laws of Pennsylvania. *See* ECF No. 1-1 at 11 § 12.10 ("The Agreement and any claims relating to its subject matter will be governed by and construed under the laws of the Commonwealth of Pennsylvania."). Defendant cites New York and Delaware law at times, *see* ECF No. 7-2 at 2 n. 2, but the contract terms clearly contemplate only Pennsylvania law.

freightgate.com/legal."  ECF No. 1-2.  Although Defendant argues that the terms are buried at the bottom of the document "in incredibly fine, illegible print," ECF No. 7-2 at 4, the font is the same size as the rest of the text in the Solutions Quote.  *See* ECF No. 1-2.  The language referencing the license terms is also in bold font.  It makes no sense that Defendant would be able to read the Solutions Quote but would not be able to read the reference to the license terms.

 Federal courts interpreting contract law have found that separate terms were clearly referenced in the main agreement under similar circumstances.  For instance, in *Materials Handling Enterprises, Inc. v. Atlantis Technologies, LLC*, the final sentence of the main agreement between two commercial entities stated that "All orders [are] subject to Atlantis Technologies LLC's Standard Terms and Conditions Sale."  563 F. Supp. 3d 387, 392 (W.D. Pa. 2021).  The court concluded that "[t]his reference to the Terms & Conditions is sufficiently clear to put a 'seasoned merchant' on notice to exercise due diligence to obtain and review the incorporated Terms & Conditions before placing an order."  *Id.* at 393; *see also, e.g.*, *Perlberger Law Assocs., P.C. v. Wells Fargo Bank, N.A.*, 21cv2287, 2022 WL 2819136, at *1, *5-6 (E.D. Pa. July 19, 2022) (main agreement stating that "use of any [Wells Fargo] deposit account, product or service will confirm [PLA's] receipt of, and agreement to be bound by, the Bank's applicable . . . account agreement" incorporated the account agreement by reference because the main agreement "specifically and clearly" refers to it); *Brandywine Prof'l Servs., LLC v. Quigley*, 13cv2865, 2015 WL 6598537, at *1-2, *4 (E.D. Pa. Oct. 30, 2015) (signed "Signature Cards and New Business Account" form stating signatory "agrees to be bound by the terms of the applicable Deposit Account Agreement(s)" incorporates the deposit account agreements by "explicit reference").

The Solutions Quote here uses similarly explicit language when it states that signatories "accept the license terms posted to freightgate.com.legal." ECF No. 1-2. Defendant cannot escape this clear reference "simply by ignoring" it. *See Materials Handling Ent.*, 563 F. Supp. 3d at 393.

<u>Identity Ascertainable.</u>  The license terms are ascertainable because they are accessible via the hyperlink referenced in the Solutions Quote. *See Standard Bent Glass Corp.*, 333 F.3d at 447. Defendant argues that the hyperlink is not ascertainable because it "is not bolded, underlined, colored, or made conspicuous in any fashion." ECF No. 7-2 at 8. Defendant cites cases involving online consumer agreements to support its position that a hyperlink must be "more than simply underscored." *Id.* (internal quotations omitted). It primarily relies on a Ninth Circuit case, *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022). *Id.* at 7-8. But *Berman* and its progeny are inapposite. Those cases involve online user agreements where consumers are required to agree to hyperlinked terms and conditions before utilizing the website's services. *See Berman*, 30 F.4th at 858. Under those circumstances, courts have held that hyperlinks must be conspicuous in order to "explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.*

That rationale does not apply here. The type of user agreements at issue in *Berman* involve one sophisticated party (the company providing the web services) and another less sophisticated party (an ordinary consumer). *See generally id.* The contract here involves two sophisticated commercial entities that knew they were entering into a contractual relationship. Under these circumstances, it is enough that the Solutions Quote identified a precise web address where Defendant could locate and review the license terms.

6

Defendant attempts to cast doubt on the accessibility of the license terms in a couple of other ways. First, Defendant suggests that the website referenced in the Solutions Quote leads to a splash page that contains a separate hyperlink called "Current Freightgate Cloud Terms," which leads to another page containing "General Terms and Conditions," which is the page that contains the license terms. ECF No. 7-2 at 4 n. 5. Defendant argues that this series of steps makes it harder to identify the relevant terms. Second, Defendant also seems to suggest that the license terms may not have actually been posted to the Freightgate legal website at the time Defendant signed the Solutions Quote. *See id.* (stating that the "currently active" license terms on the hyperlinked website are different than the terms attached to the complaint, and "it is unclear whether Exhibit A (or any other document) was hyperlinked to Freightgate's webpage at the time [Defendant] signed the [Solutions] Quote.").

These arguments are unavailing. At the motion to dismiss stage, the Court must accept as true all "well-pleaded factual allegations" and draw all reasonable inferences from them. *Iqbal*, 556 U.S. at 679. Absent any evidence to the contrary submitted by Defendants with their motion, the Court must credit Plaintiff's allegation that the operative terms were available at the hyperlinked website at the time Defendant executed the Solutions Quote. Moreover, courts have found that it does not matter whether a party "actually receive[d] an incorporated document" if that party acknowledged receipt by "signing the contract into which the document was incorporated." *Roller v. Red Payments, LLC*, 18cv1834, 2019 WL 3802031, at *6-7 (E.D. Pa. Aug. 12, 2019). Thus, even if Defendant could not access the license terms via the hyperlink referenced in the Solutions Quote, it had a "duty to inquire as to the content of the terms that [Plaintiff] sought to incorporate by reference" before signing it. *Id.* (internal quotations and citations omitted); *see also, e.g., Materials Handling Ent.*, 563 F. Supp. 3d at 393 ("Plaintiff

cannot escape the incorporation" of explicitly referenced terms by "making no effort to ascertain them"); *Progressive Pipeline Mgmt., LLC v. N. Abbonizio Contractors, Inc.*, 10cv4551, 2011 WL 1343031, at *4 (E.D. Pa. Apr. 7, 2011) ("[a] prudent contracting party would have requested a copy" of all documents referenced in main contract).

      <u>Surprise or Hardship.</u>  Finally, at this juncture, Defendant has not demonstrated that the incorporation of the license terms will "result in surprise or hardship." *See Standard Bent Glass Corp.*, 333 F.3d at 448 ("Even in a commercial transaction, a provision will not be incorporated by reference if it would result in surprise or hardship to the party against whom enforcement is sought."). "Surprise includes both a subjective element of what a party actually knew and an objective element of what a party should have known . . . A profession of surprise and raised eyebrows are not enough.  Instead, to carry its burden the nonassenting party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." *Id.* (internal quotations and citations omitted).

      Defendant argues that incorporation of the license terms "would result in serious surprise and hardship to [Defendant]" because it "was not aware of the Terms and Conditions, particularly the incredibly punitive acceleration provision," and because the terms were "not negotiated, or ever once pointed to or discussed by [Plaintiff]." ECF No. 7-2 at 8.  Thus, it may be the case that Defendant lacked any *subjective* knowledge of the license terms.  *See Standard Bent Glass Corp.*, 333 F.3d at 448.

       But Defendant should have *objectively* been aware of the license terms.  *See id.*  Plaintiff alleges that it had a review session with Defendant's authorized representative, and that representative stated that "everything looked good and she would get back to [Plaintiff] if anything needed to be changed" but "[n]o such request for changes was received[.]" ECF No. 1

¶ 10. Accepting this allegation as true and drawing all reasonable inferences in favor of Plaintiff, *Iqbal*, 556 U.S. at 679, Defendant at least had an opportunity to review and negotiate the Solutions Quote and all terms referenced therein but simply failed to do so. A reasonable merchant would have actively inquired about and reviewed the separate license terms before executing the Solutions Quote. *See Roller*, 2019 WL 3802031, at *7 (contracting parties have a "duty to inquire as to the content of the terms" of documents incorporated by reference).

Discovery may yield evidence supporting or undercutting a finding of surprise or hardship—e.g., information suggesting that these types of acceleration provisions are highly unusual in commercial contracts for cloud services. *See Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc.*, 03cv0946, 2004 WL 540019, at *5-6 (E.D. Pa. Mar. 12, 2004), *aff'd*, 149 F. App'x 81 (3d Cir. 2005) (lack of surprise/hardship at summary judgment where evidence demonstrated that incorporated provision was common in similar commercial contracts). But at this early stage in the litigation, the Court cannot conclude that Defendant will experience surprise or hardship by recognizing the incorporated license terms.

### B. Whether the Acceleration Clause is an Unenforceable Penalty

Defendant asks the Court to strike the damages sought pursuant to the acceleration provision as an unenforceable penalty. *See* ECF No. 7-2 at 8-9. Plaintiff argues that this would be improper at the motion to dismiss stage. *See* ECF No. 9 at 5. Plaintiff is correct.

"The question whether a sum stipulated for in a written contract is a penalty or liquidated damages is a question for the court[.]" *Meyer-Chatfield v. Century Bus. Serv., Inc.*, 732 F. Supp. 2d 514, 523 (E.D. Pa. 2010) (citing *Laughlin v. Baltalden, Inc.*, 159 A.2d 26, 29 (Pa. Super. 1960)). But there are often factual issues that must be determined as part of this inquiry, including "the intention of the parties, examined in the light of its subject-matter and its

surroundings." *Id.* Accordingly, "the resolution of this question is frequently beyond the scope of a motion to dismiss." *Mapp v. Westmoreland Cnty.*, 22cv718, 2022 WL 2917567, at *4 (W.D. Pa. July 25, 2022*); see also CDL Nuclear Techs., Inc. v. Five Towns Heart Imaging Med., PC*, 20cv783, 2021 WL 322294, at *3 (W.D. Pa. Feb. 1, 2021) (arguments about enforceability of liquidated damages provision "are not pure questions of law that the Court can resolve at this juncture" and are more appropriately evaluated "on a more fully developed record").

Here, whether the acceleration provision is a penalty will turn on factual issues like whether the sum due on default "'is disproportionate to the value of the performance promised or the injury that has actually occurred[.]'" *Robins Motor Transp. v. Associated Rigging & Hauling Corp.*, 944 F. Supp. 409, 411 (E.D. Pa. 1996) (quoting *Finkle v. Gulf & Western*, 744 F.2d 1015, 1021 (3d Cir. 1984)). The Court cannot make these determinations on the pleadings alone and will accordingly deny Defendant's request to strike the alleged damages resulting from the acceleration provision.

### C. Whether the Cost Collection Provision Permits Attorneys' Fees

Defendant also asks the Court to strike Plaintiff's request for attorneys' fees. *See* ECF No. 7-2 at 10. Plaintiff similarly argues that this would be improper at the motion to dismiss stage. *See* ECF No. 9 at 5.

Courts can evaluate the enforceability of attorneys' fees provisions on a motion to dismiss under certain circumstances. *See Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 574-75 (E.D. Pa. 2020) (evaluating request to strike request for attorneys' fees on a motion to dismiss). "Pennsylvania law does not allow awards for attorneys' fees in suits for ordinary breach of contract (the 'American Rule') 'unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception.'" *Id.*

10

(quoting *Mullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009)) (further quotations omitted).  "Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken."  *Id.* at 575 (citing *Berger v. Hahnemann Univ. Hosp.*, 17cv2295, 2017 WL 5570340, at *9 (E.D. Pa. Nov. 17, 2017), *aff'd*, 765 F. App'x 699 (3d Cir. 2019)).

In this case, it is not clear from the face of the complaint that the license terms do not permit attorneys' fees.  The cost collection provision contemplates recovery "for any and all expenses (actual or expected) in connection with enforcing any provision of this agreement, including but not limited to collection fees (even if such collection fees are designated as contingency fees)."  ECF No. 1-1 at 4 § 5.5.  This language does not explicitly reference attorneys' fees.  However, under Pennsylvania law, "collection fees" and "reasonable attorneys' fees" are synonymous.  *Hyperion Bank v. Empire Inv. Grp., LLC*, 09cv1582, 2009 WL 10687588, at *1 (E.D. Pa. Nov. 10, 2009) (citing *Phila. Nat'l Bank v. Rockko*, 90cv6725, 1991 WL 8428, at *1 (E.D. Pa. Jan. 28, 1991)) (citing *Phila. Nat'l Bank v. Buckman*, 171 A. 589, 591 (Pa. 1934))).  Thus, the Court cannot conclude as a matter of law that the reference to "collection fees" does not encompass attorneys' fees.

## IV. CONCLUSION

Because Plaintiff has adequately pleaded a claim for breach of contract that is plausible on its face, the Court will deny Defendant's motion to dismiss. The Court will also deny Defendant's request to strike damages stemming from the acceleration and cost collection provisions as premature. An appropriate Order will follow.

**BY THE COURT:**

_____
MARY KAY COSTELLO
United States District Judge